NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HERBERT WOLFE,**<br><br>   Plaintiff,<br><br>v.<br><br>**GOODING & COMPANY, INC.,**<br><br>   Defendant. | Docket No.: 14-cv-4728<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

     Plaintiff Herbert Wolfe, a resident of New Jersey, filed this claim for defamation and trade libel against Gooding & Company, Inc., a California corporation with a principal place of business in Santa Monica, California.  The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Before the Court is Defendant Gooding's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer venue to the Middle District of California pursuant to 28 U.S.C. § 1404(a).  There was no oral argument.  L. Civ. R. 78.1(b).  For the reasons set forth below, the motion is **DENIED**.

**I.   BACKGROUND**

     Plaintiff Wolfe is a collector of fine classic automobiles.  (Complaint at ¶ 4).  Defendant Gooding & Company, Inc. is a leading automobile auction house specializing in the finest antique, classic, sports, and racing cars. (Complaint at ¶ 7).  Gooding solicits business in New Jersey by sending catalogues to New Jersey residents.  (Declaration of Herbert Wolfe at ¶ 4).

     Plaintiff alleges that Gooding published a defamatory statement about a classic car that Wolfe claims to own.  Gooding made the defamatory statement in three places: 1.) on its website; 2.) in its catalogue of cars listed for an auction on August 18, 2013 in Pebble

1

Beach, California (the "Pebble Beach Auction Catalogue"); and 3.) at the Pebble Beach Auction. In short, the defamatory statement had the effect of reducing the value of Wolfe's car.

The car in question is an extremely rare Alfa Romeo 6C 3000 Competizione (the "Competizione"). Alfa Romeo produced a total of three Competiziones, all in the 1940s. (*See* Complaint at ¶¶ 18-20). Each of the Competiziones had a serial number on the chassis and engine. (Complaint at ¶ 19). The three serial numbers on the Competiziones were 920.001, 920.002, and 920.003 (hereinafter "001," "002," and "003"). (Complaint at ¶ 20). Wolfe purchased the 001 in 2006. (Complaint at ¶ 29). He claims that he confirmed the authenticity and provenance of both the chassis and the engine. (Complaint at ¶ 31). He completely restored the vehicle, and in 2011, it won the prestigious Amelia Island Concours d'Elegance. (Complaint at ¶ 34).

In the summer of 2013, Gooding published its Pebble Beach Auction Catalogue. (Complaint at ¶ 39). Gooding listed the 002 in the Pebble Beach Auction Catalogue. Gooding's website and Catalogue both stated that the 002 was "One of Only Two Built and the Only Example Extant." (Complaint at ¶ 42, Exhibit A). Gooding's agents also made this statement at the Pebble Beach Auction. (Complaint at ¶ 45). Gooding sold the 002 for $4,840,000 at the Pebble Beach Auction. (Complaint at ¶ 47).

Around the same time that Gooding published the Pebble Beach Auction Catalogue and held the Pebble Beach Auction, Wolfe was also trying to sell his 001. Wolfe claims that the publication of the allegedly defamatory statement caused all his prospective buyers to lose interest in his 001.

## II.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a complaint for lack of personal jurisdiction. "[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court applies the relevant long-arm statute of the forum state to determine if it permits the exercise of jurisdiction. *Id.* at 259. Second, the court applies the principles of the Due Process Clause of the Constitution. *Id.* In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process. *See* N.J. Court. R. 4:4-4(c); *DeJames v. Magnificence Carriers*, *Inc.*, 654 F.2d 280, 284 (3d Cir. 1981).

"The due process limit to the exercise of personal jurisdiction is defined by a two-

prong test.  First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  "Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'" *Id.* at 150-51 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts exist where "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*citing International Shoe*, 326 U.S. at 297).  This standard can also be explained in terms of fair notice.  In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), the Supreme Court stated that "purposeful availment" exists where the corporation "has clear notice that it is subject to suit" in the forum state, and "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or . . . severing its connection with the State."

"Minimum contacts" over a non-resident defendant can be established in one of two ways: general jurisdiction or specific jurisdiction.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009).  Here, the parties agree that only specific jurisdiction could apply.

Analysis for minimum contacts under the traditional specific jurisdiction analysis involves two essential components.  First, the defendant must have either "purposely availed" itself of the privileges of conducting activities with the forum State or "purposefully directed" its activities at the forum State.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (*citing Burger King*, 471 U.S. at 472; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (*citing Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Plaintiff argues that he is only seeking personal jurisdiction on the basis of the Pebble Beach Auction Catalogue.  Gooding sent out a total of 2,000 copies of that catalogue, and Gooding sent 55 of them to potential customers in New Jersey.  Plaintiff argues that the case *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) directs the Court to find that it has personal jurisdiction under these factual circumstances.  The argument is persuasive.

3

In *Keeton*, the plaintiff, a resident of New York, sued an out-of-state magazine publisher for libel in New Hampshire.[1] *Id*. at 772.  The publisher, an Ohio corporation with a principal place of business in California, argued that it was not subject to personal jurisdiction in New Hampshire.  *Id*.  The publisher's contacts with New Hampshire were limited to the sale of "10 to 15,000" copies of its magazine in that state each month.  *Id*.

In *Keeton*, the Supreme Court held that the publisher's "regular circulation of magazines in the forum state is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine."  *Id*. at 773-74.  The Supreme Court concluded that it was "unquestionable" that "a complaint based on those contacts" would satisfy the "minimum contacts" requirement of the Due Process Clause.  *Id*. at 774.  When the publisher of a libelous statement has "continuously and deliberately exploited" the forum's market, the *Keeton* Court stated, "it must reasonably anticipate being haled into court there in a libel action based on the contents of its [publication]."  *Id*. at 781 (*citing World-Wide Volkswagen Corp.*, 444 U.S. at 297-98).

The Supreme Court's holding in *Keeton* applies to this case.  Since Gooding sought to exploit the New Jersey market by repeatedly and deliberately sending its catalogues to New Jersey residents, it is consistent with due process to require Gooding to defend in this State a lawsuit that directly arises out of defamatory statements it made in one of those catalogues.

Defendant's main counter-argument is based on the number of publications sent to New Jersey.  *Keeton*, the Defendant argues, must be distinguished because *Keeton* involved the circulation of 5 libelous issues of *Hustler* magazine that each sold between 10 and 15,000 copies in New Hampshire.  Here, by contrast, Gooding only sent 55 of the 2,000 defamatory 2013 Pebble Beach Auction Catalogues to New Jersey residents.  Gooding characterizes these contacts as "random, fortuitous, or attenuated," insufficient to put it on notice of the possibility of a lawsuit in New Jersey.  *See Burger King*, 471 U.S. at 475.

The Court disagrees with Gooding's characterization of its solicitation activities in New Jersey as too attenuated to constitute minimum contacts.  The test for minimum contacts "has always focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts."  *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1127 (W.D. Pa. 1997) (*citing International Shoe*, 326 U.S. at 320).  The small size of Gooding's catalogue circulation (2,000 copies) only means that Gooding deliberately chose each of the 55 New Jersey residents to whom it sent the defamatory Catalogue.

---

[1] Plaintiff sought the New Hampshire forum because the statute of limitations barred parts of her lawsuit in Ohio and New York.  465 U.S. at 772 n. 1.  The Court specifically held that the lack of a party residing in New Hampshire had no effect on the existence of personal jurisdiction.  *Id.* at 775.

4

Sending 3% of its catalogues to New Jersey demonstrates a clear effort to solicit potential New Jersey residents to make very significant purchases. Gooding could assume that if its solicitation materials contained untrue statements that it could be sued for defamation or any other number of causes of action that might arise from untrue statements in its publication. If Gooding wanted to avoid being sued in New Jersey for statements made in its Catalogue, it could have refrained from sending its Catalogues there. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297 (finding purposeful availment where the defendant "has clear notice that it is subject to suit" in the forum state, and "can act to alleviate the risk of burdensome litigation by [among other things] . . . severing its connection with the State.").

The United States District Court for the Western District of Wisconsin ruled similarly in a recent and nearly identical case, *Sheltered Wings, Inc. v. Wohali Outdoors, LLC*, No. 13-CV-796-BBC, 2014 WL 1233721 (W.D. Wis. Mar. 25, 2014). In *Sheltered Wings*, Wisconsin plaintiffs sued an Oklahoma outdoor supply company for trademark infringement. The basis for personal jurisdiction in Wisconsin was the fact that the defendant had sent 29 catalogues with the allegedly infringing mark to potential customers in Wisconsin, none of whom placed any orders. The court held: "By sending catalogs intentionally to Wisconsin, defendant purposely availed itself of the privilege of conducting business in the forum state and 'expressly directed' its acts of infringement to Wisconsin." *Id.*, at * 4 (*citing Asahi Metal Industries Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987) (finding that advertising may indicate intention to serve market in forum state). The court also held that the 29 catalogues did not constitute "random," "fortuitous," or "attenuated" contacts. *Id.* The Wisconsin court in *Sheltered Wings* employed the correct analysis of facts materially identical to the facts now before this Court.

### III.    MOTION TO TRANSFER VENUE

Defendants argue in the alternative that the Court should transfer venue to the Central District of California. The Court does not agree. Venue is proper in any state where a defendant resides. 28 U.S.C. § 1391(b)(1). A corporate defendant resides in any state where the defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(c)(2). Since this Court has personal jurisdiction over Gooding, venue is proper in the District of New Jersey.

Nevertheless, 28 U.S.C. § 1404(a) permits the court to transfer a case to any other district where the civil action may have been brought "for the convenience of the parties and witnesses" or "in the interests of justice." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The burden of establishing the need for transfer rests with the movant, and the plaintiff's choice of venue should not be lightly disturbed. *Id*.

5

Commentators have called on courts to consider all relevant factors to determine whether, on the whole, the litigation would be more convenient and just if transferred to a different forum. *Id.* (*citing* 15 WRIGHT, MILLER & COOPER § 3847). These factors include private and public interests. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Private interests include the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the location of books and records, and the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in the plaintiff's chosen forum. *Id.* Similarly, if documents cannot be produced in the plaintiff's chosen forum, it is a factor favoring transfer. *Id.* The public interests include: the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80 (3d Cir. 1995).

Defendant argues that the Court should transfer the case to California because: 1.) it would be more convenient for Gooding and as-yet unidentified non-party witnesses living in California; and 2.) many of the operative facts occurred in California. Defendant does not meet its burden of demonstrating that factors favoring the California forum outweigh the deference due to Plaintiff's chosen forum. The tortious actions may have originated in California, but the effects occurred in New Jersey, and New Jersey has an interest in preventing defamatory publications from circulating within its borders. The law to be applied will be New Jersey law, and a judge in New Jersey is better equipped to interpret these laws.

In sum, Defendant offers nothing of any significant weight to tip the balance of convenience and justice against Plaintiff's chosen forum. For that reason, the motion to transfer venue will be denied.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion is **DENIED**. An appropriate order follows.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 3, 2015**