UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HERBERT WOLFE,**<br><br>Plaintiff,<br><br>v.<br><br>**GOODING & COMPANY, INC.,**<br><br>Defendant. | Docket No.: 14-cv-4728<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Herbert Wolfe brings this action for defamation and trade libel against Defendant Gooding & Company, Inc. ("Gooding"), a leading auction house for classic cars. The matter now comes before the Court on Gooding's motion for summary judgment. There was no oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, Gooding's motion is **GRANTED** as to the defamation claim and **DENIED** as to the claim for trade libel.

I.   **BACKGROUND**

The following facts are draw from the amended complaint unless stated otherwise. Plaintiff Herbert Wolfe collects classic race cars. His collection includes a 1948 Alfa Romeo 6C 3000 *Competizione*.[1] Amended Complaint ¶¶ 20, 22, ECF No. 1, Ex. A. Only three *Competiziones* were ever produced. As is customary in the class car community, each *Competizione* became known by its distinct chassis numbers, specifically 920.001, 920.002, and 920.003 (hereafter "001," "002," and "003"). Plaintiff alleges that he purchased the 001 from car collector Scott Rosen in 2006. *Id.* ¶ 30. During the summer of 2013, Plaintiff decided to sell the 001 and hired broker Francesco Bonfanti. Declaration of Paul Clark in Support of Defendant's Motion to Dismiss, Ex. G., Wolfe Dep. 67:4-8. Mr. Rosen expressed an interest in

---

[1] The 001 is registered to Zenith of Montana LLC, an entity owned solely by Plaintiff. That does not affect the Court's analysis.

repurchasing the car for roughly $4 million, and a European buyer was in discussions with Bonfanti for a purchase price of €3.1 million (or $4.1 million). *Id.* at ¶ 38.

Defendant Gooding & Company is an auction house for classic cars. In July of 2013, as Plaintiff was gauging interest among buyers for the 001, Gooding sold the *Competizione* known as 002 at its Pebble Beach auction on behalf of collector David Smith, for a price of $4.8 million. According to Plaintiff, "everybody was waiting for the Gooding Auction" to take place before finalizing an offer for the 001. Wolfe Dep. 216:11-13. Leading up to the auction, however, Gooding distributed printed material that referred to 002 as "the only model extant." The same language was used to describe the 002 on Gooding's website. ¶¶ 40-43. In light of Gooding's reputation as "one of the leading automobile auction houses . . . [and] as an authority on collectible automobiles," these statements caused potential buyers to question the authenticity of Plaintiff's 001. *Id.* ¶ 58. Those in the classic car community "who heard or read Defendant's defamatory statements necess[arily] understood that the statements about 002 affected 001." *Id.* ¶ 71. "By extension," argues Plaintiff, Gooding's statements "disparaged Wolfe's standing in the community of class car collectors by impugning his judgment and integrity." *Id.* ¶¶ 72-73. Indeed, Mr. Rosen testified that the "serious cloud" over Plaintiff's car as a result of Gooding's catalogue caused him to cease discussions about repurchasing it. Clark Decl., Ex. T, Deposition of Scott Rosen 74:9, 76:11-17.

Gooding stands by its claim that 002 is the only authentic *Competizione* in existence. Gooding contends that Wolfe's car contains few, if any, parts from the original 001 and emphasizes that Wolfe has failed to produce documentation of an unbroken chain of ownership tracing the car back to its production and participation in Italy's famed Mille Miglia race in 1948. Expert Patrick Ottis concludes that the chassis, transmission, engine and bodywork of Wolfe's purported 001 are not original *Competizione* parts. Ottis estimates that 95% of the car's coachwork is new. Clark Decl., Ex. X at 4. Gooding also points to an article by one Dorien Berteletti, a car enthusiast who owned the Wolfe car from 1987 to the early 2000s. Clark Decl. Ex. G, Wolfe Depo. 126:18-20. Berteletti wrote that when he discovered 001 in Ohio, the car consisted of what he believed to be the original *Competizione* body with a missing frame or chassis. Clark Decl., Ex. S. In the article, Berteletti states that the vehicle was set on a chassis stamped 915249. This appears to contradict Plaintiff's claim that his car—which, of course, features chassis 920.001—is the same car recovered by Berteletti. This fact is crucial, argues Gooding, because the chassis is the part most closely associated with a car's "identity."

Plaintiff's expert offer a different account. Jeffrey Murray, founder of Vintage Car Research LLC, asserts that authenticity "is determined by the totality of circumstances, rather than turning on the identity of a given automobile." *See* Clark Decl., Ex. U. Murray explains that virtually all classic race cars have undergone substantial repairs and replacements because of accidents and harsh racing conditions. *Id.* Indeed, all agree that 001 was famously involved in a serious crash in the 1948 Mille Miglia. *See* Clark Decl., Ex. W. Plaintiff's second witness, Bruce Amster, notes that welding marks on the frame are consistent with the *Competizione* post war prototype, and that past repairs to the roof of Plaintiff's car are consistent with accounts of the accident during the 1948 Mille Miglia. *Id.* Plaintiff also offers metallurgic analysis showing that the metal from Plaintiff's car matched other Alfa Romeo samples from the 1930s and 1940s. White Decl., Ex. E. In addition, forensic consultant John Brunetti used lighting techniques and photographic methods showing that the "920001" stamped on the frame of Plaintiff's vehicle is the only chassis number anywhere on the frame. Finally, Plaintiff represents that in 2011, before Gooding's auction of the 002, Plaintiff's vehicle (purportedly the 001) was awarded "Best in Class" at the vaunted Amelia Island Concours.[2]

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

### A. Trade Libel

The elements of trade libel, also known as product disparagement, are: "(1) publication; (2) with malice; (3) of false allegations concerning its property, product or business, and (4) special damages, i.e. pecuniary harm." *Buying For The*

---

[2] The Amelia Island Concours had been dubbed by the New York Times as "one of the nation's top concours d'elegance." Pl. Cross Statement Material Facts ¶ 59.

*Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 326 (D.N.J. 2006); *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 378 (D.N.J. 2004)(citing *System Operations Inc. v. Scientific Games Develop. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977)). Viewing the facts in a light most favorable to Plaintiff, the Court finds that genuine issues of material fact exist and that Gooding is not entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

i. <u>Was Gooding's statement "of and concerning" Plaintiff's car?</u>

Gooding disputes that the allegedly libelous statement was "of and concerning" Plaintiff's vehicle. Its argument is straightforward: the Pebble Beach catalogue stated that the 002 was the "only extant example" of the *Competizione*, but it did not mention or refer to Plaintiff's vehicle. The Court does not agree. While there does not appear to be a New Jersey case directly on this point, case law establishes that a libelous statement need not explicitly refer to a plaintiff's product, "so long as it was understood to refer to it by at least one third party." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186 (3d Cir. 1998). "[I]f the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must appear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998) (quoting *Gnapinsky v. Goldyn*, 128 A.2d 697, 703 (N.J. 1957)).

With respect to extrinsic circumstances, Plaintiff maintains that in the small and insular community of classic car enthusiasts, the statement clearly impugned the authenticity of the 001; for if the 002 is the "only example extant" then the 001 must be fake. As evidence, Mr. Rosen testified that he was seriously considering (re)purchasing the 001—that he in fact made an offer in the area of $4 million— until withdrawing interest as a result of the "serious cloud" created by Gooding's statement. *See* Rosen Depo. 74:9, 75:16.

ii. <u>Truth or falsity of Gooding's statement</u>

Before determining the truth or falsity of Gooding's statements, the Court must determine whether they were statements of fact or opinion. *See Ward v. Zelikovsky*, 643 A.2d 972, 979-80 (N.J. 1994) ("The higher the 'fact content' of a statement, the more likely that the statement will be actionable."). Even statements fairly characterized as opinions may be actionable "when they imply false underlying objective facts." *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 372 (D.N.J. 2004). Keeping in mind the importance of context, the Court finds that

4

a car's authenticity depends upon a number of fact-based observations—at least when used in connection with a particular commercial transaction.

Although competent experts may reach different conclusions as to whether Plaintiff's car is an authentic *Competizione*, such conclusions are based on findings which are predominantly factual. To illustrate, the parties' experts disagree as to whether a car *must always* have an original chassis to be authentic, but they all agree that (a) an original chassis is among the most important factors when assessing authenticity, and (b) the originality of a chassis can be objectively verified. Hence, disagreement among the witnesses about whether Plaintiff's chassis was in fact part of the original 920.001 chassis is an issue of fact, not a difference of opinion.[3]

Having determined that the statements are capable of objective verification, the Court finds that the authenticity of Plaintiff's purported *Competizione* presents a genuine issue of material fact. The parties' experts obviously disagree on this point and there is no basis for making credibility determinations in lieu of trial.

iii.  Malice: knowing or reckless disregard for truth of statement

The parties do not agree about what level of intent trade libel requires. Plaintiff argues that a private party may state a claim for trade libel by alleging that the statement in question was made with negligence as to its truth or falsity. Gooding insists that trade libel requires malice: knowledge or reckless disregard as to the truth or falsity of the statement. *See, e.g.*, *Lynch v. New Jersey Educ. Ass'n*, 735 A.2d 1129, 1135-36 (N.J. 1999). Although Plaintiff's pitch for adopting the negligence standard has appeal, existing case law in New Jersey clearly uses the higher standard of malice in trade libel and product disparagement cases, *Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 427 (D.N.J. 2005), and it is not this Court's place to blaze a new trail in this area of substantive state law.

Nevertheless, the Court finds that whether Gooding's statement was made with knowledge or reckless disregard for its truth is a material issue of fact that cannot be resolved without a trial. The fact that Gooding conducted an investigation into the authenticity of Plaintiff's 001 does not reflect what Gooding actually believed when it stated that the 002 was the "only example extant." It does appear that Gooding was positioned to form a concrete belief about the authenticity of the 001, but ascertaining that belief requires the Court to undertake credibility

---

[3] Indeed, Gooding itself takes the position that its statements were "factually correct." Reply Br. Supp. Mot. Summ. J. 1, ECF No. 68.

5

determinations. Viewing the facts in a light most favorable to Plaintiff, a reasonable factfinder could conclude that Gooding was aware that 001 may be authentic but that it nonetheless declared that 002 was the only remaining *Competizione* so that Gooding could achieve the highest possible auction price.

   iv.   <u>Special Damages</u>

Special damages is an "essential" element of trade libel. *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 379 (D.N.J. 2004). "The necessary showing is specific: plaintiff must establish pecuniary loss that has been realized or liquidated, such as lost sales, or the loss of prospective contracts with customers." *Patel v. Soriano*, 848 A.2d 803, 835 (N.J. App. Div. 2004). *See Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 477 F. App'x 890, 901 (3d Cir. 2012) (holding that plaintiffs must "allege either loss of particular customers by name, or a general diminution of business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication.") (citations omitted).

Viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged special damages. Scott Rosen indicated at his deposition that in late 2012 or 2013, he made an offer of $4 million for the 001, consisting of $3 million in cash plus Rosen's 3500 Vignale Spyder. *See* Rosen Dep. 75:8-23. Rosen further testified that the statements made by Gooding caused him to abandon the potential transaction with Plaintiff because of the "serious cloud" created around the 001. *Id* at 74:6-11, 76:11-17. The absence of documentation of a firm offer is no reason to disregard Mr. Rosen's testimony; rather, the appropriate course of action is to assess Mr. Rosen's credibility at trial.

**B. Defamation**

Whereas trade libel arises from injurious statements about a plaintiff's product or business, defamatory statements must be "of and concerning" the plaintiff. *See, e.g.*, *Mayflower Transit, LLC*, 314 F.supp.2d at 377 ("Defamation of a corporation injures the reputation of the corporation; [trade libel] injures the reputation of its products."). Because statements injurious to a product tend to injure the reputation of the seller, defamation and trade libel often apply to the same conduct. Here, however, there is insufficient evidence for a reasonable factfinder to conclude that Gooding's statements injured Plaintiff's reputation in the classic car community. This is not a case where "a statement about the poor quality of a product implies that the seller is fraudulent." *Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.*, 516 A.2d 220, 133 (N.J. 1986). Further, Plaintiff does not allege that anybody who learned of Gooding's statements subsequently refused to deal with Plaintiff, or that the

statements compromised Plaintiff's ability to sell other cars. Because the statement was not "of and concerning" Plaintiff, Gooding's motion to dismiss the defamation claim is **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED in part**. Plaintiff's defamation claim (Count 1) is dismissed. The motion is denied with respect to the trade libel claim (Count 2). The motion is also denied as to the declaratory judgment claim (Count 3); discussion of declaratory relief is premature at this time, other than to note that such relief may be pursued at trial.

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**September 11, 2017**